IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WORCESTER COUNTY

AMANDA HOPKINS on behalf of herself
and others similarly situated,

    Plaintiff,

v.

MODERNIZE, INC.,

    Defendant.

Case No. 17-cv-40087-TSH
**(Leave to file granted August 7, 2018)**

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Like many telemarketers whose illegal conduct is called to account, Modernize, Inc. ("Modernize") spends a significant portion of its opposition brief (ECF 58) attacking and disparaging the plaintiff, Amanda Hopkins ("Ms. Hopkins") as a liar[1] and a "spoliator."[2] Modernize also claims that Ms. Hopkins somehow placed herself outside of the "zone of

---

[1] Ms. Hopkins was challenged at her deposition with a specific interrogatory answer that described the damages incurred to Ms. Hopkins and the class due to the illegal calls at issue. Ms. Hopkins explained that the damages included privacy violations, nuisance and monthly cost incurred by the telemarketing calls. *Id.* On cross-examination, Ms. Hopkins confirmed that her personal phone plan was unlimited, and that she personally did not incur a charge per call. *Id.* Ms. Hopkins explained that she believed that others in the class may have incurred such a charge. *Id.* Modernize claims that because Ms. Hopkins did not incur a charge herself, her interrogatory answers include a "false claim" and that such "behavior" is sufficient to disqualify her from serving as a class representative. *See* ECF 58 at 3-4. *See* Exhibit A, Deposition of Amanda Hopkins at pg. 101-102. Ms. Hopkins deposition is attached in its entirety so the Court itself can assess if this allegation is legitimate or absurd.

[2] Ms. Hopkins recently upgraded to a new cell phone and cleaned out her old phone in case someone else needed it – a process most consumers engage in every couple of years in response to the release of the next must-have device. Ex. A, Hopkins Depo at pg. 76-78. Modernize claims such an action is "spoliation" as the phone purportedly contained evidence of the calls to Ms. Hopkins. *See* ECF 58 at 3-4. As has been made clear to Modernize, Ms. Hopkins is only suing Modernize for calls made by Modernize directly, not for all the many other calls made by "US Home Improvements." The calls Ms. Hopkins is suing for are evidenced by Modernize's ***own call records***. Ms. Hopkins also produced her phone bill, which evidences her receipt of the illegal calls at issue. Modernize offers no explanation as to what exactly it thinks would be found on Ms. Hopkins' old cell phone that is not already in its possession. Undaunted, Modernize still claims that Ms. Hopkins' "spoliation" of evidence disqualifies her from serving as the class representative.

interest" the TCPA was designed to protect because, as a result of her investigation, she successfully identified Modernize as one of the entities responsible for the myriad of illegal telemarketing calls made to her personal cell phone. Further, as to the crucial question of consent, Modernize claims its failure to obtain proper consent was a mere "technical" violation of the TCPA and its "byzantine" regulations. ECF 58 at pg. 3. Modernize also claims that a lead generated from an internet visit purportedly made by Ms. Hopkins to a website promoting home insurance, and an undated recording of an illegal telemarketing call made to Ms. Hopkins, somehow cobbled together, satisfies the TCPA's prior express consent signed in writing requirement. In addition, Modernize claims that Ms. Hopkins' phone number long listed on the National Do Not Call Registry ("Registry"), is actually a business phone and, therefore, Ms. Hopkins cannot represent a class of residential consumers who were called by Modernize while their numbers were listed on the Registry. Finally, Modernize hopes that the recent decision of the United States Supreme Court in *Bristol Meyers* precludes the Court from certifying a consumer class action that includes consumers outside of the Commonwealth of Massachusetts. None of these arguments carry the day. The classes should be certified and allowed to proceed to trial.

## I. ARGUMENT[3]

### A. Courts have endorsed posing as an interested consumer as a means of enforcing federal law, including the TCPA.

Ms. Hopkins is a graduate of Becker College. She also recently graduated with an MBA from the Eisenberg School at U.Mass Amherst. She is married with one child. Her husband

---

[3] Of course, this is not Modernize's first TCPA rodeo. *See* ECF 42 at 3-5 (detailing Modernize's TCPA litigation record). Modernize complains that the TCPA and its regulations are "byzantine" and the alleged violations at issue in this case are merely "technical." ECF 58 at pg. 3. This is nonsense. Modernize is a sophisticated corporation represented by a large law firm. It is well equipped to understand and follow the law. Rather than comply with the law, it simply chose not to.

2

serves with the Department of Homeland Security. *Ex.* A, Hopkins Depo at pg. 18, 28, 34-35. She has had the same cell phone number since 2002. It has been listed on the Registry since 2004. *Id.* at 24. Despite its listing on the Registry, Ms. Hopkins' cell phone has long been inundated with illegal telemarketing calls. *Id.* at 14-16; 69-70. Relevant here, beginning in 2016, Ms. Hopkins received a voluminous number of illegal telemarketing calls from an entity that identified itself as "US Home Improvements." *Id.* at 24, 26-27, 53, 54, 55-56, 65. It is not disputed that the real name for "US Home Improvements" is ACE Solutions, an entity based in India from which Modernize has long purchased consumer contact information.[4] In the myriad of illegal telemarketing calls made to Ms. Hopkins, ACE failed to ever identify itself by its legal name. *Id.* It is a violation of federal telemarketing law for an entity to fail to identify itself to consumers when making a telemarketing call.[5] Of course, if a consumer cannot identify the telemarketer, it is impossible to hold the telemarketer to account.

Repeatedly, after her receipt of these illegal calls, Ms. Hopkins instructed "US Home Improvements" to stop calling. *Id.* at 59-65. Of course, she never should have had to do so as her personal cell phone has long been listed on the Registry. *Id.* at 24. Thereafter, when her "stop calling" demands failed, Ms. Hopkins decided to fight back. Instead of just telling "US Home Improvements" to stop calling her, and appropriately suspicious that "US Home Improvements" was not the legal name of the telemarketer, Ms. Hopkins decided to engage "US

---

[4] A recent Freedom of Information Act request to the Federal Trade Commission revealed that since 2013, over sixty consumers have complained to the FTC as to illegal telemarketing conducted by ACE, a/k/a US Home Improvements. *See* Exhibit B, Freedom of Information Act compilation of telemarketing complaints as to "US Home Improvements." The complaints were produced by the FTC in Excel format. The attached is an excerpt that shows the most relevant data relating to these complaints. The full Excel spreadsheet has been produced to Modernize.

[5] *See* 16 CFR § 310.4(a)(8) (it is "abusive conduct" in violation of the TSR to "fail[] to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call").

3

Home Improvement" and to feign an interest in their goods and services, in an effort to identify the true legal name of the entities behind these illegal telemarketing calls. *Id.* at 59-65. Thereafter, she was able to successfully identify the various entities working with "US Home Improvements," including Modernize.

While there *is* something wrong with ACE lying to Ms. Hopkins by claiming it was "US Home Improvements," there is nothing wrong with Ms. Hopkins posing as an interested customer in order to identify the legal names of the entities responsible for illegally calling her cell phone. Indeed, "testers," who pose as interested individuals in order to identify other victims in the housing and employment context "usually are praised rather than vilified." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006); *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)). The same is true outside the housing and employment context. The Federal Trade Commission, which is charged with enforcement of federal telemarketing laws, regularly has investigators pose as potential customers. *See e.g.* Consent Decree, *United States v. Credit Bureau Collection Services*, No. 2:10-cv-169, Doc. No. 3, § X (S.D. Oh. Feb. 24, 2010) (authorizing FTC to use posing consumers to enforce federal law). TCPA plaintiffs are permitted to engage in the same conduct. *See FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016) (rejecting claim a witnesses testimony should be ignored because she made misrepresentations to the telemarketer in order to identify the calling entity); *Cunningham v. Rapid Response Monitoring Serv.,* 251 F. Supp. 3d 1187, 1194-95 (M.D. Tenn. 2017) (rejecting allegation that a consumer lost standing to sue a telemarketing by feigning interest in order to identify the legal name of the calling entity).

By posing as an interested consumer, Ms. Hopkins acted as a private attorney general

investigating illegal conduct, which is exactly what the TCPA was designed to encourage consumers to do. The TCPA and the statutory damages it offers are specifically designed to appeal to plaintiff's self-interest and to direct that self-interest toward the public good. *See Cunningham*, 251 F. Supp. 3d at 1195. *See also Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) (acknowledging role of consumer as private attorney general under the [TCPA].); *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (same); *Mey v. Venture Data,* 2017 U.S. Dist. LEXIS 135429, at *26 (recognizing that by engaging in a surreptitious investigation to identify a telemarketer plaintiff did exactly as Congress intended).

**B. Ms. Hopkins Has Standing To Serve As A Class Representative.**

Modernize claims that Ms. Hopkins does not have constitutional or prudential standing to represent the class because she has not suffered an injury in fact. As it must, Modernize acknowledges that an overwhelming number of courts, including this one, have rejected this argument. *See* ECF 58 at 12. *See Gibbs v, SolarCity Corp.,* 239 F.Supp. 3d 391 (D.Mass.) (March 8, 2017) (Hillman, J.). Instead, Modernize claims that Ms. Hopkins' situation is unique and that since she purportedly "invited" more telemarketing calls by playing along to identify the callers, she falls outside the "zone of interests" that the TCPA protects, and therefore has no standing to represent the class. In support, Modernize relies solely on *Stoops v. Wells Fargo Bank, N.A.,* 2016 U.S. Dist. LEXIS 82380 (W.D. Pa. June 24, 2016). In *Stoops*, the plaintiff testified that she purchased a "shoe-box" full of cell phones, for the sole purpose of attracting illegal telemarketing calls. The phones were used for no other purpose and were purchased

5

solely to support the plaintiff's admitted "business" of filing TCPA claims.[6]

Absent from Modernize's recitation in regards to *Stoops* is any mention of the various federal court decisions which have expressed broad skepticism as to the use of *Stoops* as a sword against TCPA advocates. *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195-96 (M.D. Tenn. 2017) (rejecting *Stoops* line of reasoning recognizing that Congress designed the TCPA to incentivize private litigants to enforce the law); *Mey v. Venture Data*, 245 F. Supp. 3d 771, 783-84 (N.D.W.Va. 2017) (rejecting *Stoops* for proposition that a plaintiff who tricks a telemarketer into identifying itself has lost her standing to sue); (*Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993, at *16-17 (D. Mass. Aug. 31, 2016) (distinguishing *Stoops* and professional plaintiff standing argument); *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 123660, at *8 (D.N.J. Sept. 12, 2016) (distinguishing *Stoops*); *Morris v. Unitedhealthcare Ins. Co.*, No. 4:15-CV-00638-ALM-CAN, 2016 U.S. Dist. LEXIS 168288, at *17 (E.D. Tex. Nov. 8, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 168118, at *1 (E.D. Tex. Dec. 6, 2016) (same).

Ms. Hopkins' cell phone has long been listed on the Registry. As such, it should never have been called by ACE or Modernize without prior express consent signed and in writing. Ms. Hopkins initially responded to the myriad of calls from the fictitious "US Home Improvements" by simply telling them to "stop calling." This did not work. Ms. Hopkins then decided to fight back. To do so, she had to identify the legal name of the entities responsible for the call. She then feigned interest in order to identify the legal names of the entities responsible for these calls. In doing so, Ms. Hopkins successfully identified Modernize and now seeks to hold Modernize

---

[6] Here, of course, Ms. Hopkins has had the same cell same number since 2002. Ex. A, Hopkins Depo at pg. 24. She uses the phone for only personal reasons. *Id.* at 81-91. Unlike the plaintiff in *Stoops,* Ms. Hopkins listed her personal cell phone number on the Registry over a decade ago specifically to *avoid* telemarketing calls. *Id.* at 24.

responsible. Her investigative efforts on behalf of the class to pierce through the deceptions of ACE and Modernize demonstrate that she is an ideal class representative and do not deprive her of standing to represent the class.

### C. Individual Issues Relating to Consent Do Not Predominate And Can Be Resolved Using Common Proof

It is not disputed that *Modernize does not have the signed written consent of a single class member* to receive telemarketing calls promoting its goods or services. Rather, Modernize claims consumers such as Ms. Hopkins consented to receive telemarketing calls by "opting in" on a website controlled by its India based vendors, and by orally consenting to receive future telemarketing calls during an illegal telemarketing call from the fictitious "US Home Improvements." *See* ECF 58 at Ex. 11. Neither basis of consent satisfies the TCPA, and Modernize's defense in this regard will fail on evidence common to the class.

#### 1. Leads Obtained From Getusinsurancenow.com Are Fraudulent And Inadequate

At the outset of this case, Modernize claimed the basis for its defense of prior express written consent signed and in writing was evidenced by an "opt in" lead in Ms. Hopkins' name that was obtained via a website called http://getusinsurancenow.com/Home.html. *See* ECF 58 at Ex. 11. As detailed at length in Plaintiff's Motion for Class Certification, this document is a complete fabrication and fraud. *See* ECF 42 at 7-9. At class certification, Modernize disclosed *for the first*[7] time that this "opt in" lead did not even actually come from ACE, but instead came from yet another vendor ironically named TCPA-Compliant-Data ("TCD"). *See* ECF 58 at Ex.

---

[7] In discovery, plaintiff sought correspondence between counsel for Modernize and ACE to further explore the factual basis of Modernize's prior express consent defense and the authenticity, reliability and accuracy of evidence being produced to Modernize by ACE to assist ACE in the defense of this case. Modernize has claimed some type of privilege to all correspondence between Modernize's counsel and ACE. A Motion to Compel on this is issue will be filed shortly.

7

11, ¶4.[8] Modernize claims this lead is authentic because ACE claims it is so. ACE, in turn, claims the lead is authentic and reliable because TCD claims it is so. ACE claims the lead is its business record. Of course, it is not. The document came from TCD. *Id.* Neither Modernize or ACE have first-hand knowledge as to the authenticity of reliability of this lead. In fact, as demonstrated by plaintiff, it is fraudulent and it should not be relied upon by this Court for any purpose.[9]

Finally, even if Modernize produced authentic, reliable evidence of a lead relating to Ms. Hopkins, and if Ms. Hopkins had visited getusinsurancenow.com as alleged and, in fact, had submitted her contact information, Modernize will *still* be unable to establish that it had the prior express written consent of any class member to receive Modernize telemarketing calls. The reasons for such failure are detailed in Ms. Hopkins' moving memorandum. *See* ECF 42 at 12-15. In sum, however, in order to obtain valid prior express consent under the TCPA, the consent obtained must be specific to the seller or, in this case, specific to Modernize. The disclosures made on the website make no mention whatsoever of Modernize. *See* ECF 58 at Ex. 11, Declaration of Tahir Nawaz, at Ex. A. Mr. Nawaz also claims that ACE obtained similar opt-in leads from nine other websites. *Id.* at ¶9. However, neither Modernize nor ACE contend that any of these websites informed consumers they would receive telemarketing calls from Modernize. *See In re Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd.

---

[8] Modernize failed to provide the name of anyone associated with this purported entity, an address, or even a country of origin. *See* ECF 58 at Ex. 11, ¶4. This entity does not appear to have a web presence.

[9] *See* Fed.R.Evid. 901(b) (a party may authenticate a matter through the testimony of a witness who has knowledge that the matter is what its proponents claim it to be). To be authentic as a business record under Fed. R. Evid. 803(6), a document must have sufficient trustworthiness to be considered. *See Woods v. City of Chicago,* 234 F.3d 979, 988 (7th Cir. 2000). To demonstrate such trustworthiness and reliability, a party must offer testimony of a person who can speak from personal reliable knowledge about the record and be qualified to introduce the record as evidence at trial. *Id.*

1830, 1844 ¶33-34 (Feb 15, 2012) (prior express consent must be specific to the entity calling). For this reason alone, the consent claim fails.

In addition, even if Ms. Hopkins visited getusinsurancenow.com and even if this website had, in fact, included Modernize specific consent language, the "opt in" would still fail to suffice as a basis for prior express consent as this website failed to make the required disclosures mandated by the ESign Act. As detailed previously (*See* ECF 42 at 12-15), where a telemarketer has failed to obtain a consumer's signed writing, it can only obtain valid consent via a website, if the website satisfies the disclosures mandated by both the TCPA and the ESign Act. The disclosures made via the website getusinsurancenow.com do not come close to satisfying the ESign Act.

In support of its claim that valid prior express consent signed and in writing can be obtained from a website, Modernize cites to *Winner v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017). This case, however, proves the plaintiff's point that ESign disclosures must be made in the absence of a signed writing. In *Winner*, the plaintiff joined a customer reward program offered by Kohl's and consented to receive text solicitations. After the plaintiff received a number of text solicitations, she filed suit noting that Kohl's did not have her prior express consent signed in writing. Kohl's then moved to dismiss claiming that the consent it did obtain, along with the disclosures made on its website, complied with the TCPA and the ESign Act. The Court ultimately agreed and dismissed the case. Specifically, the Court noted that, in addition to other ESign mandated disclosures, the disclosures made by Kohl's informed plaintiff she would be receiving text solicitations from Kohl's, informed plaintiff she had the right to revoke her consent and informed the plaintiff exactly how to revoke her consent. *Id.* at 20-21.

9

Here, of course, based on the common evidence relied upon by Modernize, not one of the predicates relied upon by the *Winner* Court is present. The website did not inform consumers they could expect to receive telemarketing calls from Modernize. The web disclosures did not disclose to consumers that they had the right to withdraw their consent. The web disclosures did not explain to consumers exactly how they could withdraw their consent. *See* ECF 58 at Ex. 11, Declaration of Tahir Nawaz, at Ex. A. As this website did not make required ESign disclosures to consumers, it cannot substitute for a signed writing. Accordingly, Modernize's prior express consent defense fails on common proof.

In addition, although Modernize claims that ACE obtained similar opt-ins from multiple websites (*See* ECF 58 at Ex. 11, Declaration of Tahir Nawaz, at ¶8), it does not allege that ***any*** of these websites mentioned Modernize or made any of the above disclosures mandated by ESign. As such, no individual examination of each of these websites is required. Modernize's prior express defense will fail using evidence common to the class and the consent question can be resolved on summary judgment.

**2. The Undated Recording Purportedly Made On July 12, 2016 Is Suspect and, Even if Authentic, Does Not Establish Prior Express Written Consent**

In a further effort to demonstrate that it had Ms. Hopkins' prior express written signed consent to send her telemarketing calls, Modernize offers to the Court a tape recording in which Ms. Hopkins was illegally called by "US Home Improvements", and during which Ms. Hopkins feigned an interest in its products and services to identify the telemarketer's true name (the "Recording"). *See ECF 58* at pg. 1. Reliant on the ACE declaration, Modernize represents to the Court that this Recording was made on July 12, 2016, and that it relied upon this Recording as the basis for prior express written consent when telemarketing to Ms. Hopkins in July and August of 2016. *Id. See* ECF 58 at Ex. 11, Declaration of Tahir Nawaz, at ¶3.

First, like the fraudulent "opt in" relied upon by Modernize, there is doubt as to the authenticity of the Recording, specifically in regards to when the Recording was made and whether it in fact served as the basis for Modernize to call Ms. Hopkins in July and August of 2016 as alleged. In support of the authenticity and reliability of the Recording, Modernize again asks this Court to accept the hearsay declaration offered by ACE. *See* ECF 58 at Ex. 11. In the text of the Recording that Modernize represents was made on July 12, 2016, Ms. Hopkins and "US Home Improvements" discuss siding and roofing products. *See* Exhibit C, tape of the Recording; ECF 58 at pg. 1 (recitation of the text of the Recording). In support of the authenticity and reliability of the Recording, ACE attaches to its declaration the Recording's log notes. *See* ECF 58 at Ex. 11. ¶6, and Exhibit C. These log notes, however, that purportedly should match the "roofing" and "siding" substance of the purported Recording, refer to a campaign by ACE to sell auto insurance ("ACE AUTOINS") and to the model and make of a vehicle purportedly owned by Ms. Hopkins. *Id.* In other words, ***the log notes of the Recording do not match the text of the Recording.*** In addition, the log notes of the Recording indicate that the call lasted for 151 seconds. *Id.* The actual audio of the Recording offered by Modernize that it claims was made on July 12, 2016 call, however, lasts for 113 seconds.[10] ***The log notes of the Recording evidencing its duration do not match the duration of the Recording offered.***

More importantly, even if the Recording was authentic and, in fact, was made on July 12, 2016, prior to the Modernize calls to Ms. Hopkins, it *still* does not evidence Modernize's prior express signed consent to receive telemarketing calls. Again, where a telemarketer has failed to obtain consent via a signed writing, it must comply with the TCPA and the ESign Act. In the recording proffered by Modernize, there is no mention whatsoever specifically identifying

---

[10] The actual recording at issue was introduced at Ms. Hopkins' deposition as Exhibit 8, Bates MOD_HOPKINS0014510. It is attached at Exhibit C as a placeholder and will be manually filed with the Court.

11

Modernize as the entity who would be calling, no mention of a right to withdraw consent, and no mention of the mechanism to withdraw consent. Accordingly, for the same reasons discussed above, and by the Court in *Winner v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017), Modernize's prior express consent defense fails on common evidence.

Finally, although Modernize claims it has thousands of similar recordings from class members, it does not claim that any of these recordings mention Modernize or make the required ESign disclosures. As such, no individual examination of each of these recordings is required. Modernize's prior express defense will fail using evidence common to the class and the consent question can be resolved on summary judgment.

### 3. Ms. Hopkins Has Had The Same Cell Phone Number Since 2002. It Has Long Been Listed On The Registry, Is Used for Personal Reasons And Is Not Held Out By Anyone As a Business Line

Next, Modernize attempts to attack Ms. Hopkins' standing to represent a class of recipients of Modernize calls who were similarly listed on the Registry. Ms. Hopkins has had the same cell phone since 2002, and it has been listed on the Registry since 2004. *See* Ex. A, Hopkins Depo at pg. 24. In 2014, Ms. Hopkins accepted a "perk" offered by her employer to pay for the cell phone bills of employees. At no time, however, did Ms. Hopkins or her employer ever hold this number out as a business line. Ex. A, Hopkins Depo at pg. 74, 81-91, 213-214. Modernize does not claim to the contrary. Plaintiff's expert, Anya Verkhovskaya, explained at her deposition that she removed from the class list referred to in her expert report any numbers used for business purposes. *See* Exhibit D, Deposition of Anya Verkhovskaya at pg. 28-35. She explained that Ms. Hopkins' phone number was not identified in her analysis as a business phone because it was never held out by anyone as a business line. *Id.* As the phone

number at issue was used by Ms. Hopkins for personal reasons, and as Modernize offers no evidence to even suggest that anyone ever held this number out to the public as a business number, Ms. Hopkins' DNC claim is typical of the DNC claims of all other members of that class.[11]

    4. ***Bristol Meyers* Is Inapplicable to A Rule 23 Consumer Class Action Particularly Where There Is No Claim That This Court Does Not Have Personal Jurisdiction Over Ms. Hopkins, the *Representative* Plaintiff**

Finally, Modernize raises for the first time the argument that under the Supreme Court's ruling over a year ago in *Bristol-Myers Squibb Co. v. Superior Court*, __ U.S. __, 137 S. Ct. 1773 (2017), this Court lacks personal jurisdiction over it with respect to the claims of putative class members outside Massachusetts. However *Bristol-Myers* merely applied "settled principles regarding specific jurisdiction" to a scenario unlike this case—a mass tort action in which numerous named plaintiffs asserted a variety of state law claims in a state court. *See id.* at 1777, 1782. Modernize cites several cases for the proposition that under the reasoning in *Bristol-Myers*, nationwide class actions are barred in forums where the defendant is not subject to general jurisdiction. Outside of the Northern District of Illinois, courts have resoundingly rejected this argument, including in the TCPA context.[12]

---

[11] Modernize notes that where a particular phone is used both for business and personal purposes, a fact inquiry must be conducted to determine if the number is primarily used for personal purposes. *See* ECF 58 at 25-26. The scenario in which such an inquiry arises is where a home-based business uses the same phone number for both personal and business reasons. There is no contention here that Ms. Hopkins' used her cell phone for a home based business. Ms. Verkhovskaya testified that any numbers that were identified as associated with both a business and a residence were removed from the class list. *See* Exhibit D, Deposition of Anya Verkhovskaya at pg. 33-35.

[12] *See, e.g. Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, No. 6:17-cv-1734, *13-15 (M.D. Fla. Apr. 4, 2018) (rejecting argument in TCPA context); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods.*, No. 17-2161, 2018 U.S. Dist. LEXIS 43974, at *12-14 (E.D. La. Mar. 19, 2018) (same); *Fitzhenry-Russell v. Dr. Pepper Snapple Group*, No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, at *13-16 (N.D. Cal. Sept. 22, 2017) (declining to extend *Bristol-Myers* to a class action); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *31-58 (E.D. La. Nov. 28, 2017) (same); *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126-127 (D.D.C.2018) (same); *Sanchez v. Launch Tech. Workforce Sols, LLC*, 297 F. Supp. 3d 1360, 1363-69 (N.D. Ga. 2018); ("…*Bristol-Myers* simply reaffirms controlling due-process law and does not apply to federal class actions…."); *In re Morning Song Bird Food Litig.,* No. 12cv01592 JAH - AGS, 2018 U.S. Dist. LEXIS 44825; *16-17 (S.D. Cal. Mar. 19, 2018).

Moreover, the Northern District of Illinois line of cases Modernize cites does not support the argument that personal jurisdiction over the out-of-state class members is lacking in this case, a federal class action involving a federal question. All but one of those cases involved only state law claims and were brought on the basis of diversity, rather than federal question jurisdiction. *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 U.S. Dist. LEXIS 7947, at *5-6 (N.D. Ill. Jan. 18, 2018); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 U.S. Dist. LEXIS 177892, at *8-11 (N.D. Ill. Oct. 26, 2017); *Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 U.S. Dist. LEXIS 82642, at *4-5 (N.D. Ill. May 16, 2018). In the other case, *Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*, No. 14 C 2032, 2018 U.S. Dist. LEXIS 39754 (N.D. Ill. Mar. 12, 2018), the named plaintiff's claims were less suited to represent the claims of a nationwide class than Plaintiff's claims are here because the faxes at issue in that case were geographically targeted to advertise discrete performances at eleven specific locations in the United States, with the named plaintiff only receiving faxes as to two Illinois performances. *See id.* at *8-9, 57. In contrast, Modernize made the calls at issue here to individuals nationwide without targeting recipients of any particular area of the country.

While Modernize's argument as to personal jurisdiction fails on its merits anyways, the Court should not even consider it in the first place because it has long been waived. An objection to personal jurisdiction is a "personal privilege[] which may be waived." *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 691 (1st Cir. 1992). Modernize failed to assert any kind of a personal jurisdiction defense in its Answer (filed over a month *after* the Supreme Court's pronouncement in *Bristol-Myers*) or file a

14

Rule 12 motion. (*See* Doc. 5.) Accordingly, the defense is waived.[13]

## II.   CONCLUSION

This case meets the requirements for class certification. None of the arguments advanced by Modernize carry the day. Ms. Hopkins is an ideal class representative. She has both constitutional and prudential standing to represent the class. Modernize's attempt at demonstrating prior express signed consent as to Ms. Hopkins and the class will fail using common evidence. Ms. Hopkins' phone number called by Modernize has long been used as a personal number long listed on the Registry. It has never been held out by anyone as a business line. As this Court has personal jurisdiction over Ms. Hopkins, it will have personal jurisdiction over all other class members once this case is certified to proceed as a class action. For all of these reasons, the Motion for Class Certification should be granted.

Plaintiff,
By Counsel,

*/s/ Matthew P. McCue*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net

---

[13] Just yesterday, Magistrate Judge Deavers in *Charvat v. National Holdings,* Case No. 2:14cv2205 (SD Ohio) (July 26, 2018) denied defendant's motion to amend its Answer making this same argument, noting such was waived. A copy of this decision is attached at Exhibit E.

Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com

Brian K. Murphy
MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
murphy@mmmb.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Matthew P. McCue*
Matthew P. McCue

## **RULE 37.1 CERTIFICATION**

I hereby attest that plaintiff has made multiple efforts to resolve this discovery dispute without judicial intervention and has conferred with defense counsel on multiple occasions as evidenced by the attachments to this motion. In addition, on 13, 2018, I conferred with defense counsel specifically as to Modernize's claims of privilege and its privilege log and was not able to resolve the pending dispute.

*/s/ Matthew P. McCue*
Matthew P. McCue